# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| CAROL S. ANDERSON and MARK R. ANDERSON, | ) |
| | ) 16 C 4748 |
| Debtors. | ) |
| | ) Judge Jorge L. Alonso |
| | ) |
| CAROL S. ANDERSON and MARK R. ANDERSON, | ) |
| | ) |
| Debtors-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| BMO HARRIS BANK, N.A., | ) |
| | ) |
| Appellee. | ) |

## MEMORANDUM OPINION AND ORDER

Debtors Carol S. Anderson and Mark R. Anderson appeal to this Court, pursuant to 28 U.S.C. § 158(a)(1), from a decision of the United States Bankruptcy Court. For the following reasons, the bankruptcy court's decision is reversed.

## BACKGROUND

This appeal stems from the consolidated bankruptcy case of debtors Carol S. Anderson and Mark R. Anderson. Their initially separate Chapter 7 involuntary bankruptcy cases, both filed in October 2013, were converted to Chapter 11 and consolidated on March 4, 2014. Prior to consolidation, BMO Harris Bank, N.A. ("BMO"), as successor in interest to Amcore Bank, N.A, filed proofs of claim in each of the debtors' individual cases to assert a claim against Mark based on a promissory note in the amount of $697,000, secured by property located at 151 West

Wing Street, Unit 905, f/k/a 201 West Wing Street, Arlington Heights, Illinois ("the Wing St. Property").

The Wing St. Property was also the subject of a foreclosure action that BMO brought against Mark and others in 2009 in the Circuit Court of Cook County, case number 09-CH-34081 ("the Wing St. Foreclosure Action"). In May 2013, in the Wing St. Foreclosure Action, BMO filed a Second Amended Complaint consisting of two counts: Count I, in which BMO sought a judgment of foreclosure and a deficiency judgment against Mark and co-defendant Walter Kaiser; and Count II, in which BMO alleged breach of contract against Mark and Kaiser for failing to make payments required under the promissory note.

About five months later, the filing of debtors' bankruptcy cases automatically stayed the Wing St. Foreclosure Action pursuant to 11 U.S.C. § 362. On December 20, 2014, BMO moved in the bankruptcy court for relief from the automatic stay, seeking leave to proceed with the Wing St. Foreclosure Action. (Appellant Designation of R. on Appeal (hereinafter, "R.") at 145[1], ECF No. 12-2.) The bankruptcy court granted the motion, entering an order ("the Stay Relief Order") granting "full and complete relief from the Automatic Stay of Section 362 to permit BMO HARRIS BANK to proceed with the pending State Court foreclosure litigation with respect to the property commonly known as 151 W. Wing St., Unit 905, Arlington Heights, Illinois 60005 as more particularly described in the Motion for Relief." (R. at 855, ECF No. 16.)

The Wing St. Foreclosure Action resumed, and on January 23, 2015, the Circuit Court of Cook County entered an Amended Order of Summary Judgment and Judgment of Foreclosure and Sale in the Wing St. Foreclosure Action. Specifically, according to the terms of the order, the court entered "Judgment of Foreclosure under Counts I and II of the Second Amended

---

[1] The Court will follow the parties' convention of using the "PageID#" in the top right corner of each page's electronic case filing header in order to refer to specific pages of documents in the record.

Complaint for Mortgage Foreclosure . . . pursuant to 735 ILCS 5/15-1506 in favor of plaintiff, BMO Harris, against Defendants Mark R. Anderson (*in rem*); Walter Kaiser (*in personam*);" and others, and ordered a judicial sale of the Wing St. Property. (R. at 637, ECF No. 12-7.) On April 8, 2015, the circuit court entered an order confirming the sale of the Wing St. Property and providing that "[a]n *in rem* deficiency judgment is ordered in favor of the Plaintiff, BMO Harris Bank, N.A., . . . and against Defendant[] Mark Anderson," and "an *in personam* deficiency judgment is ordered in favor of the Plaintiff, BMO Harris Bank, N.A., . . . and against defendant Walter Kaiser pursuant to his obligations under the Promissory Note, in the . . . total amount of $646,396.33." (R. at 352-53, ECF No. 12-5.)

On January 27, 2016, in the consolidated bankruptcy action, debtors filed an objection to BMO's claim against Mark arising out of the promissory note, arguing that, having already fully litigated the Wing St. Foreclosure Action against Mark to final judgment in state court, BMO was barred by *res judicata* from litigating Mark's liability under the promissory note again. BMO filed an amended proof of claim in which it reduced the amount of its claim, but it maintained its claim in the amount of $646,396.33, the deficiency after the sale of the Wing St. Property, and it maintained its right to seek that amount from Mark personally, arguing that the foreclosure judgment against Mark had been *in rem*, not *in personam*. The bankruptcy court overruled the objection as "premature." (Opening Br. of Appellant, App., April 14, 2016 Tr. at 11:15-16, ECF No. 22-1.) The court explained that it had "never understood the bifurcation of foreclosure cases," and it had sympathy for debtors because there "should be some effort to get them resolved" all at once, rather than piecemeal (*id.*, Tr. at 11:16-19), but nevertheless, in the court's experience, Illinois courts commonly permit creditors to pursue *in personam* deficiency judgments separately from foreclosure (*id.*, Tr. at 12:23-13:3). Debtors cited a recent case of the

3

Illinois Appellate Court, *LSREF2 Nova Investments III, LLC v. Coleman*, which held that a creditor who had already received an *in rem* judgment against the borrower in a foreclosure action was barred from subsequently seeking an *in personam* deficiency judgment on the promissory note because "*res judicata* bars not only what was actually decided in the first action but, also, whatever could have been decided." 33 N.E.3d 1030, 1034, 1037 (Ill. App. Ct. 2015) (citing *In re Liquidation of Legion Indem. Corp.*, 870 N.E.2d 829, 834 (Ill. App. Ct. 2007)). The bankruptcy court was unmoved, explaining that it still had doubts based on the fact that "Illinois allows all this stuff to be pursued at different times in different ways," and, because Illinois law was so "unstructured" in that respect, the court overruled the objection. (Opening Br., App., Tr. at 12:25-25, 13:18.) Debtors appeal that ruling.

## DISCUSSION

This Court has jurisdiction to review "judgments, orders and decrees" issued by the bankruptcy court. 28 U.S.C. § 158(a)(1). "A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *In re Midway Airlines, Inc.* 383 F.3d 663, 668 (7th Cir. 2004) (citing *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002)).

In this appeal, as in the bankruptcy court, debtors argue that BMO is barred by *res judicata* from seeking to establish Mark's personal liability under the promissory note because BMO litigated that issue to final judgment in the Wing St. Foreclosure Action. BMO responds by arguing that the bankruptcy court correctly ruled that the Wing St. Foreclosure Action does not bar BMO from collecting from Mark on the promissory note because the judgment against him was *in rem*, not *in personam*, and Illinois law recognizes that foreclosure of a mortgage and damages for breach of a promissory note are distinct, independent remedies. Further, BMO argues that it could not have obtained an *in personam* judgment against Mark, even if it had

4

sought one, because it had no authority to litigate its claims against him personally while his bankruptcy proceedings were pending; it had only sought (and only received) relief from the automatic stay in order to proceed with foreclosure to protect its interest in the Wing St. Property, not to proceed against Mark personally. The Court will address the latter argument first.

### A. SCOPE OF RELIEF FROM STAY

"When a petition in bankruptcy is filed, the automatic stay provisions of 11 U.S.C. § 362 take effect and prevent creditors from taking any action to collect on their debts." *In re Jepson*, 816 F.3d 942, 945 n.4 (7th Cir. 2016). However, if a creditor holds a mortgage secured by property worth less than the debtor owes, then "bankruptcy proceedings may only delay the inevitable result," and "[t]here may be no reason to make the creditor wait until the final distribution of the estate to get what it bargained for," so "Congress included a provision for relief from the automatic stay[,] § 362(d)". *In re Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1231-32 (7th Cir. 1990). "Under certain circumstances the bankruptcy court may lift the stay under that section, either for cause, including lack of adequate protection of a creditor's interest, or . . . the stay may be lifted if the debtor has no equity in the collateral and the collateral is not necessary to an effective reorganization of the debtor." *Id.*

Section 362(d) does not require relief from an automatic stay to take a particular form; the statute states that, where relief is warranted, the bankruptcy court "shall grant relief . . . such as by terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362. "Therefore, the Court has considerable flexibility to fashion relief" that is appropriate to a particular case. *In re Ascher*, 146 B.R. 764, 772 (Bankr. N.D. Ill. 1992) (citing 2 *Collier on*

5

*Bankruptcy* ¶ 362.07). To determine the scope of the relief BMO obtained in this case, the Court must examine the terms of the bankruptcy court's Stay Relief Order.

As the Court has already stated above, the bankruptcy court granted "full and complete relief from the Automatic Stay of Section 362 to permit BMO HARRIS BANK to proceed with the pending State Court foreclosure litigation with respect to the property commonly known as 151 W. Wing St., Unit 905, Arlington Heights, Illinois 60005 as more particularly described in the Motion for Relief." The Motion for Relief described the foreclosure litigation in more detail, explained that the debtors were not paying their property taxes and a recent appraisal showed that the property was worth less than Mark owed on the loan, and argued that (a) there was cause to lift the stay because BMO did not have adequate protection of its interest and, alternatively, (b) Mark had no equity in the property and it was not necessary to the effective reorganization of his financial affairs. Other than these additional facts and arguments, however, the Motion for Relief contained nothing to shed any additional light on the scope of the relief sought; the language of the Motion's prayer for relief reflects the language of the Stay Relief Order almost exactly.

Under the most natural reading of the above-quoted language, the Stay Relief Order granted BMO leave to proceed with the pending foreclosure litigation described in the Motion for Relief as if there had never been any bankruptcy or automatic stay. BMO argues that because the Stay Relief Order only granted BMO leave to "proceed with the pending State Court foreclosure litigation *with respect to the property commonly known as* [the Wing St. Property]," the order authorized BMO to obtain only *in rem* relief against Mark, not *in personam* relief. But this reading is strained. Read naturally, the "with respect to the property" language does not limit the remedies BMO may pursue but merely identifies the particular foreclosure action BMO

6

is permitted to litigate. In support of this interpretation, the debtors have cited a case, *In re Wright*, in which the bankruptcy court interpreted an order that lifted the automatic stay "so that [the creditor] may exercise all of its rights and remedies *with respect to each of the Properties*" (emphasis added) to mean that the creditor was entitled "to pursue all remedies under applicable law, including the commencement of one or more deficiency actions," such as a deficiency action against the debtor personally. 486 B.R. 491, 496, 500-01 (Bankr. D. Ariz. 2012) (citing *In re Tyler*, 166 B.R. 21, 25 (Bankr. W.D.N.Y. 1994) ("When . . . this Court modifies or terminates the automatic stay . . . to allow a party to commence or continue a pending state court mortgage foreclosure proceeding . . . , it is the Court's expectation that it has modified or terminated the stay for the completion of all related state court mortgage foreclosure proceedings, including the establishment of any deficiency judgment, unless any such state court proceedings are specifically excepted by the order.")). *Wright* and *Tyler* are persuasive, and the Court agrees with debtors' reading of the Stay Relief Order. By its own terms, the Stay Relief Order permitted BMO to proceed with the Wing St. Foreclosure Action as if there were no bankruptcy and to pursue against Mark whatever remedies the law afforded BMO in that litigation, whether *in rem* or *in personam*.

### B. RES JUDICATA IN FORECLOSURE CASES

The debtors argue that BMO could have obtained a judgment against Mark for breach of the note in the Wing St. Foreclosure Action, and because it failed to do so, any further claim against Mark based on his breach of the note is barred by *res judicata*.

> The doctrine of res judicata prevents the multiplicity of lawsuits between the same parties involving the same facts and issues. *Turczak v. First Am. Bank*, 997 N.E.2d 996, 1000 (Ill. App. Ct. 2015). In order for *res judicata* to bar the same parties or their privies from litigating causes of action that were or could have been raised in an earlier lawsuit, the moving party must demonstrate: (1) a final

judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of the parties or their privies. *Id.*

*Coleman*, 33 N.E.3d at 1032-33 (internal citations altered). Importantly, *res judicata* bars "not only what was actually decided in the first action, but, also, whatever could have been decided." *Id.* at 1033-34.

According to debtors, this case is indistinguishable from *Coleman*, which held that, where the circuit court could have entered a personal deficiency judgment against a defendant in a foreclosure action "based on plaintiff's request for a personal deficiency judgment in its foreclosure complaint, plaintiff's subsequent claim [in a breach of contract action based on breach of the promissory note] for the amount of the deficiency as determined in the foreclosure suit as a result of the sale of the property is barred by the doctrine of *res judicata*." *Id.* at 1037.

BMO argues that *Coleman* is distinguishable from the present case because, in *Coleman*, the first action was a single-count foreclosure case, whereas in this case, BMO's Second Amended Complaint in the Wing St. Foreclosure Action consisted of two counts, a mortgage foreclosure count and a breach of contract count for breach of the promissory note. This distinction is significant, BMO contends, "[b]ecause a mortgage and an accompanying promissory note securing the mortgage constitute separate contracts, [and therefore] they give rise to legally distinct remedies." *LP XXVI, LLC v. Goldstein*, 811 N.E.2d 286, 289-90 (Ill. App. Ct. 2004). Because BMO did not request or obtain an *in personam* judgment against Mark on Count II, the breach of contract count, BMO concludes that its breach of contract claim is still pending.

The Court agrees with BMO that *Coleman* is distinguishable from this case because the earlier action in *Coleman* was a single-count foreclosure case, whereas the Second Amended Complaint in the Wing St. Foreclosure Action contained not only a mortgage foreclosure claim

8

in Count I but also a breach of contract claim based on Mark's breach of the promissory note in Count II. But this fact is of no help to BMO; to the contrary, it only strengthens debtors' position that BMO's breach of contract claim is barred by *res judicata* because BMO has already raised that claim in a case that proceeded to final judgment. The circuit court in the Wing St. Foreclosure Action entered an order granting summary judgment "under Counts I *and II* of the Second Amended Complaint" (emphasis added), and the circuit court's judgment became final after the sale of the property and judicial confirmation of the sale. In other words, BMO brought a case in which it explicitly asserted a claim for breach of contract against Mark *in personam* for breach of the promissory note, and it litigated that case to final judgment. It is clear, based on the scope of the pleadings and the course of proceedings, that BMO could have obtained an *in personam* judgment against Mark in the Wing St. Foreclosure Action, but it did not do so, and, even if its failure to obtain that relief was merely a mistake or an oversight, BMO is now barred by *res judicata* from seeking that relief in a subsequent suit. *See Ertl v. City of De Kalb*, 39 N.E.3d 15, 22-23 (Ill. App. Ct. 2013) (plaintiff who prevailed in breach of contract action against employer but dropped his pursuit of a reinstatement remedy prior to final judgment was barred by *res judicata* from seeking reinstatement remedy in a subsequent action); *see also In re Pyramid Energy, Ltd.*, 160 B.R. 586, 592 (Bankr. S.D. Ill. 1993) ("Pyramid clearly had an opportunity to litigate its claim against H & P in the prior lawsuit, and, having squandered its opportunity by failing to prosecute that suit, is not now entitled to another round.").

BMO is correct that numerous cases of the Illinois Appellate Court explain that a mortgage and the accompanying promissory note "need not be enforced in a single case," *Turczak*, 997 N.E.2d at 1000, "[b]ecause a mortgage and an accompanying promissory note securing the mortgage constitute separate contracts, [and therefore] they give rise to legally

distinct remedies that cannot be pursued in a single-count foreclosure suit," *Goldstein*, 811 N.E.2d at 289-90. *Coleman* distinguished these cases because, unlike *Coleman*, they did not involve a plaintiff who had alleged in his original foreclosure complaint that the defendant was "personally liable for any deficiency," 33 N.E.3d at 1031, obtained judgment in its favor on that complaint but not *in personam* relief against the defendant, and then sought *in personam* relief for the same debt against the same defendant in a subsequent breach of contract action; under those circumstances, *Coleman* held, it was inescapable that the "same group of operative facts" were in play in both actions, *see id.* at 1034. Although the Court finds this reasoning persuasive, it need not decide whether *Coleman* correctly distinguished the earlier cases,[2] nor, to the extent that *Coleman* conflicts with them in any respect, need it decide whether *Coleman* is correctly decided; it makes no difference because this case is distinguishable from *Coleman*, *Goldstein*, and *Turczak* to the extent that all of these cases depend for their outcomes on whether a mortgage foreclosure claim and a claim for breach of the accompanying promissory note are identical causes of action for purposes of *res judicata*. Because the Second Amended Complaint contained both claims, this case does not present that question.

As for BMO's argument that there has not been a final judgment on the breach of contract claim in Count II and that claim remains pending, the argument is perfunctory, BMO

---

[2] Some of the facts of *Goldstein* and *Turczak* that *Coleman* cites as distinguishing factors do not appear to be distinguishing at all, either because they are present in *Coleman* as well or because they are irrelevant to the holdings of the earlier cases. *See* Elizabeth Martin, Note, *Getting A Second Bite at the Apple: The Res Judicata Exception for Seeking Foreclosure Deficiencies in Illinois*, 2016 U. Ill. L. Rev. 2271, 2302-04 (2016) (asserting that "[*Coleman*] cannot be properly reconciled with *Turczak* and *Goldstein*" and criticizing its reasoning in this respect). Regardless, the Court finds persuasive *Coleman*'s emphasis on the fact that, in *Coleman*, unlike in other cases, it was clear that the plaintiff specifically alleged in an earlier foreclosure action that the defendant "was personally liable for any deficiency," litigated that case to final judgment without obtaining an *in personam* judgment, and then sought *in personam* relief for the same debt in a subsequent action, which appears to be taking two bites at the same apple. *Cf. Vill. of Gilberts v. Holiday Park Corp.*, 502 N.E.2d 378, 382-83 (Ill. App. Ct. 1986) (*res judicata* barred village's suit to enjoin development of a mobile home park based on the developer's alleged violation of certain ordinances because village could have raised those violations in developer's previous suit against the village seeking judicial declaration that it was in compliance with all applicable ordinances).

cites no authority to support it, and the Court fails to see any basis for concluding that any part of the Wing St. Foreclosure Action is still pending. As this Court explained above, the circuit court in the Wing St. Foreclosure Action entered an order granting summary judgment "under Counts I *and II* of the Second Amended Complaint" (emphasis added), and the circuit court's judgment of foreclosure became final after the sale of the property and judicial confirmation of the sale. There was no language in the order confirming the sale in which the circuit court reserved jurisdiction for any other purpose; the confirmation of the sale left nothing to do but execute the judgment. BMO apparently did not pursue the relief it now seeks in the Wing St. Foreclosure Action before it reached final judgment, but it does not follow that the breach of contract claim is still pending or that the judgment is not final. *Cf. Ertl*, 39 N.E.3d at 22-23; *Pyramid Energy*, 160 B.R. at 592.

BMO also argues that the bankruptcy court order from which debtors appeal was not rendered in a proceeding that qualifies as a "subsequent lawsuit on the merits of [BMO's] claim for breach of contract on the Promissory Note, and thus it does not fit the basic criteria for *res judicata*." (Resp. Br. at 11, ECF No. 24). This argument misses the point. It makes no difference for purposes of this appeal whether BMO's filing a proof of claim amounts to re-litigating the Wing St. Foreclosure Action. The order that debtors appeal from is an order overruling their objection to BMO's proof of claim for its breach of contract claim against Mark based on his breach of the promissory note. Under 11 U.S.C. § 502(b)(1), if there is an objection to the filing of a proof of claim, the bankruptcy court must disallow the claim if it is "unenforceable against the debtor and property of the debtor, under . . . applicable law." If an action to assert the claim against the debtor would be barred by *res judicata*, then the claim is unenforceable and must be disallowed. *See In re Orseno*, 390 B.R. 350, 357 (Bankr. N.D. Ill.

11

2008). Because BMO's claim is barred by *res judicata*, the bankruptcy court should have disallowed the claim.

Because the Court concludes that BMO was not barred by the automatic stay of 11 U.S.C. § 362 from proceeding on its breach of contract claim against Mark, and because it follows that BMO's breach of contract claim for breach of the promissory note is barred by *res judicata*, this Court must reverse the bankruptcy court's order overruling debtors' objection to the proof of claim based on Mark's breach of the promissory note and remand for further proceedings consistent with this opinion.

## **CONCLUSION**

For the foregoing reasons, the bankruptcy court's decision is reversed, and this case is remanded to the bankruptcy court for further proceedings consistent with this Opinion.

**SO ORDERED.**

                                          **ENTERED: September 5, 2017**

                                        **HON. JORGE ALONSO**
                                        **United States District Judge**